# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE J. MONTIEL,<br><br>Plaintiff,<br><br>vs.<br><br>R. TAHER-POUR, et al.,<br><br>Defendants. | 1:11cv02145 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document 43)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Jesse J. Montiel, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 28, 2011. This action is proceeding on Plaintiff's August 30, 2013, First Amended Complaint against Defendants Green, Taher-Pour[1], Wilson, Das and Wynn for violation of the Eighth Amendment.[2]

Defendants Taherpour and Wilson filed a motion for summary judgment[3] on January 21, 2014. Plaintiff opposed the motion on March 17, 2014. Defendants filed their reply, along with

[1] According to Defendants' pleadings, Defendant Taher-Pour's name is actually "Taherpour."

[2] Findings and Recommendations to dismiss Defendant Wynn for failure to effectuate service are pending.

[3] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

evidentiary objections, on April 15, 2014.  The motion is submitted upon the record without oral argument.  Local Rule 230(l).

Defendants Green and Das filed an answer on June 2, 2014.

## I. LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509

F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS[4]

Plaintiff is currently incarcerated at Pleasant Valley State Prison ("PVSP"), where the events at issue occurred.

In 2007, Plaintiff began having severe back pain while incarcerated at Donovan Correctional Facility. He was given the non-steroidal anti-inflammatory drug ("NSAIDs") Asperine. Shortly thereafter, Plaintiff was transferred to Calipatria State Prison. On October 5, 2007, Plaintiff was prescribed Tylenol for his back pain.

On or about November 20, 2007, Plaintiff arrived at PVSP. His back problems were becoming more intense and he was prescribed numerous NSAIDs. Plaintiff continued receiving different forms of NSAIDs through the early part of 2008 to help alleviate the pain and tingling sensations he'd been experiencing.

On March 24, 2008, after months of complaining of severe pain and other sensations, Plaintiff underwent an x-ray that revealed two degenerative/herniated discs in his back.

On June 13, 2008, Plaintiff was prescribed gabapentin to help alleviate numbness and the tingling sensations. The medication was prescribed on a trial basis. It helped with the numbness and tingling, but did little to relieve the pain.

---

[4] Contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

In March 2010, after trying numerous NSAIDs for pain, Plaintiff was prescribed a combination of gabapentin and tramadol. This combination worked well in controlling his pain and other symptoms.

Plaintiff alleges that in June 2010, physicians on A-Yard began systematically discontinuing inmate pain medication pursuant to a policy.

On or about October 26, 2010, Plaintiff saw Defendant Physician's Assistant Wilson and learned that he had recommended to the physician who would see Plaintiff that his medications should be stopped and he should only be prescribed NSAIDs. Plaintiff contends that Defendant Wilson knew that NSAIDs never worked for him. Plaintiff alleges that all Defendants also knew that he had active liver disease and that NSAIDs could therefore be harmful.

On November 26, 2010, Defendant Taherpour discontinued Plaintiff's gabapentin. Plaintiff told Dr. Taherpour that he had tried other forms of medications, but that they did not work. Dr. Taherpour told Plaintiff that she was stopping the medication on recommendation of Defendant Wilson, and that she would only prescribe the NSAID ibuprofen pursuant to policy.

Immediately after his gabapentin was stopped, Plaintiff began submitting medical request forms complaining that the numbness and tingling sensations had come back. He was told by the nurse that pursuant to Defendant Wilson's order, his medication was not to be renewed or reordered.

On December 10, 2010, Defendant Physician's Assistant Green discontinued Plaintiff's tramadol. Plaintiff alleges that this was done without an examination, as Plaintiff was sick that day and did not make it to his appointment. Plaintiff asked the nurse to reschedule and advised her that his medication was still good for another week. However, Defendant Green discontinued Plaintiff's only remaining medication and recommended that it not be renewed.

Plaintiff continued to submit sick-call forms complaining of severe pain. He was informed that per Defendant Wilson's orders, his medications were not to be refilled or reordered.

On December 26, 2010, Plaintiff was hospitalized in PVSP's infirmary after becoming depressed because of the pain. While hospitalized, he saw Defendant Dr. Wynn, who stated that he would not do anything for Plaintiff's pain because it had already been stopped by a previous doctor and he did not want to go over anyone's head. Dr. Wynn did not respond to Plaintiff's request for medication to treat his pain.

Plaintiff also saw a second doctor while hospitalized. This doctor prescribed gabapentin in a lower dose to treat his numbness and tingling sensations. However, she would not prescribe anything for Plaintiff's pain.

Plaintiff was discharged from the infirmary on January 3, 2011, and learned that his gabapentin was once again stopped. He was left without any medication to treat his severe pain.

On January 10, 2011, Plaintiff saw Defendant Physician's Assistant Das and explained his situation. Defendant Das told Plaintiff that he would not give him anything other than NSAIDs because his medication had already been stopped by previous doctors. Plaintiff told Defendant Das that he was in severe pain, could not sleep and was becoming depressed again. Defendant Das stated, "sorry, it's policy."

On February 25, 2011, Plaintiff spoke to Defendant Wilson about the grievances he had filed. Plaintiff pointed out that he had a 2008 x-ray showing a back injury and Defendant Wilson responded, "oh, I guess I will have to review your chart again."

On March 1, 2011, Plaintiff received a response from Defendant Wilson. He did not address any of the issues that Plaintiff had brought to his attention and stated that the appeal was partially granted because Plaintiff was receiving ibuprofen. Plaintiff alleges that Defendant Wilson knew this medication was inadequate to treat his back pain.

After six months, Plaintiff alleges that he continues to live in severe pain, and the pain is getting worse. His request forms have all been ignored.

Based on these facts, Plaintiff alleges an Eighth Amendment deliberate indifference claim against Defendants Green, Taherpour, Wilson, Das and Wynn.

## III. UNDISPUTED MATERIAL FACTS[5]

Plaintiff suffered a shoulder and back injury after a car accident in 1997. Pl.'s Dep. 15:19-16:10.

Plaintiff has been incarcerated at PVSP since November 2007. About one and one-half months prior to his transfer to PVSP, Plaintiff started complaining to Calipatria State Prison doctors that his back was hurting. Pl.'s Dep. 15:24-16:2; 17:11-14. Calipatria doctors prescribed Ibupforen and aspirin for his back pain. Pl.s Dep. 17:15-16. Plaintiff was still taking aspirin when he arrived at PVSP. Pl.'s Dep. 18:21-19:5.

Plaintiff was prescribed numerous forms of NSAIDs for back pain after arriving at PVSP, with the first NSAID prescription written in March 2008. Taherpour Decl. ¶ 7, Ex. 2.

On March 24, 2008, Plaintiff had an x-ray of his spine taken. The x-ray showed moderate narrowing of the space between discs L4 and L5, and mild hypertrophic spurring from L3 through L5. Taherpour Decl. ¶ 4, Ex. 1. The results were indicative of mild degenerative disc disease. Taherpour Decl. ¶ 4, Ex. 1. Treatment of mild to moderate degenerative disc disease may include cautious administration of anti-inflammatory medications, non-narcotics like acetaminophen, weight loss, gentle stretching, exercise and physical therapy. Taherpour Decl. ¶ 6.

On June 13, 2008, Plaintiff saw his Primary Care Provider ("PCP") and complained of lower back pain and tingling in his lower extremities. Plaintiff's PCP prescribed the NSAID Indocin for his back pain. His PCP also prescribed gabapentin for neuropathy on a trial basis, and requested a nerve conduction velocity and an electromyogram to further evaluate the source of Plaintiff's pain. Taherpour Decl. ¶ 8, Ex. 4.

Plaintiff's PCP scheduled a NCV/EMG test and noted that he would consider discontinuing the gabapentin prescription if the test was negative. Taherpour Decl. ¶ 10, Ex. 5.

[5] Facts which are immaterial to resolution of Defendants' motion for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

Plaintiff did not go to the appointment, however, and the "Refusal of Examination" form indicates that Plaintiff was asleep. Taherpour Decl. Ex. 6.

On January 7, 2009, Plaintiff saw his PCP for back pain. Plaintiff's PCP indicated that his examination did not indicate a significant back pathology and he did not prescribe tramadol. Instead, Plaintiff's PCP discontinued the NSAID salsalate and put him back on the NSAID Indocin. Taherpour Decl. ¶ 12, Ex. 8.

On March 18, 2010, Plaintiff was prescribed tramadol for his lower back pain. Taherpour Decl. ¶ 13, Ex. 9.

On August 2, August 22, October 9 and November 21, 2010, Plaintiff was evaluated by nurses who noted no abnormalities and found that the only evidence of Plaintiff's back pain was his subjective complaints. Taherpour Decl. ¶ 13, Ex 10.

On August 31, 2010, Plaintiff was examined by Defendant Wilson. Defendant Wilson found no objective evidence to support Plaintiff's subjective complaints of severe back pain and neuropathy. He noted that Plaintiff's examination was benign and that there were no radiographic studies to support Plaintiff's claim of a ruptured disc. Defendant Wilson renewed Plaintiff's medications so that he could review Plaintiff's chart for evidence of a disc injury. If no evidence of an injury existed, Defendant Wilson noted that he would reduce the gabapentin at the next visit. Taherpour Decl. ¶ 14, Ex. 11.

On November 10, 2010, Plaintiff spoke to Defendant Taherpour about his pain. She obtained a detailed medical history from Plaintiff, reviewed his file and physically examined and observed Plaintiff. She determined that Plaintiff's pain was consistent with musculoskeletal pain, not neuropathic pain. Taherpour Decl. ¶ 15, Ex. 12. Musculoskeletal pain is treated with NSAIDs, physical therapy and the avoidance of the activities that worsen the pain.[6] Taherpour

[6] Plaintiff attempts to dispute this fact by denying that musculoskeletal pain is treated *only* with NSAIDs and physical therapy. Defendants do not assert, however, that these are the only treatments. Moreover, Plaintiff is not an expert qualified to offer medical opinions. Fed. R. Civ. P. 56(d)(4); Fed. R. Evid. 702.

Decl. ¶ 15.  Gabapentin does not have Food and Drug Administration approval for the treatment of neuropathic pain or musculoskeletal pain, but it is prescribed for various off-label conditions, including neuropathic pain.  Taherpour Decl. ¶¶ 9, 15.  Defendant Taherpour determined that gabapentin was not medically indicated and discontinued the medication by tapering Plaintiff off over a four-day period.  Taherpour Decl. ¶ 15, Ex. 12.  She also advised Plaintiff that he had a questionable medical necessity for tramadol to treat his back pain, and that she thought ibuprofen would be better.  Taherpour Decl. ¶ 16, Ex. 12.  Defendant Taherpour did not discontinue Plaintiff's tramadol that day and prescribed ibuprofen for thirty days.  She scheduled a follow-up appointment in thirty days to evaluate his lower back pain.  Taherpour Decl. ¶ 16, Ex. 12.

Plaintiff was scheduled to see Defendant Green on December 10, 2010.  Taherpour Decl. ¶ 17.  On December 10, 2010, Plaintiff was told that refusal to attend the appointment could result in getting tapered off tramadol because the prescription was set to expire on December 14, 2010, and he needed to be reevaluated before the prescription could be renewed.  Plaintiff did not attend the appointment with Defendant Green.[7]  Taherpour Decl. ¶ 17, Ex. 13.

On December 10, 2010, Defendant Green discontinued Plaintiff's tramadol prescription and noted that he had ibuprofen.[8]  Defendant Green noted that he had never seen Plaintiff before and could not determine whether Plaintiff had a medical need for tramadol unless he examined him.  Taherpour Decl. ¶ 18, Ex. 13.

After December 10, 2010, Plaintiff was prescribed Tylenol, ibuprofen and "just about every NSAID that exists."  Pl.'s Dep. 26:14-19.

---

[7] Plaintiff attempts to dispute this fact by alleging that he told the nurse he was sick and asked to reschedule the appointment.  However, Plaintiff's discussion with the nurse is not material to the issues presented.

There is also a dispute as to what the nurse told Plaintiff (i.e., whether his tramadol would be tapered if he refused to go to the appointment).  Again, this is not material to the issues presented.

[8] Plaintiff attempts to dispute Defendant Green's discontinuation of his tramadol by arguing that the prescription was good for two more weeks.  As Defendants point out, however, Plaintiff's contention is directly contradicted by the evidence.  Plaintiff's list of medications states that his prescription would expire on December 14, 2010.  Taherpour Decl. Ex. 13.  In any event, when his prescription expired is not relevant to the issues.

When Plaintiff's gabapentin and tramadol prescriptions expired, he was working in the main kitchen as the sanitation crew leader. Pl.'s Dep. 11:2-1; 35:15-18; 36:17-18. He mainly swept and mopped the floors and would occasionally help unload some milk crates. Pl.'s Dep. 35:21-36:19. The crates were fifty to sixty pounds.[9] Pl.'s Dep. 36:24-25.

PVSP has a pain management committee ("PMC") that is made up of physicians and mid-level healthcare providers. An inmate's PCP can request assistance from the PMC in the diagnosis and/or management of chronic pain issues. One of the PMC's functions is to review an inmate's medical file to determine whether his medical condition warrants certain medications. The PMC will make a recommendation after reviewing an inmate's medical file and consulting with his PCPs. The recommendation is reviewed by the referring provider, who can either follow it or disregard it. Taherpour Decl. ¶ 19.

Defendant Wilson referred Plaintiff to the PMC after he filed an inmate appeal. Pl.'s Dep. 33:1-9; Taherpour Decl. ¶ 19.

Plaintiff met with the PMC on March 16, 2011. The PMC observed his movements, visually examined him, reviewed his medical file, and discussed his complaints of pain. The PMC noted that Plaintiff's current functionality was "pretty good." He moved briskly and full of energy, had no difficulties sitting or getting up from this chair, and walked without difficulty. The PMC agreed with Plaintiff's health care providers that tramadol and gabapentin were not medically indicated for his level of pain. The PMC advised Plaintiff that NSAIDs seemed to be the appropriate medication and that he could benefit from another course of physical therapy.

At the end of the meeting, Plaintiff became uncooperative and told the PMC that he would have to initiate a lawsuit. Taherpour Decl. ¶ 20, Ex. 14.

---

[9] Plaintiff denies that the crates weighed more than fifty pounds. However, while the ten pound difference is not material, his deposition testimony specifically states that the crates weighed fifty to sixty pounds.

Based on her interactions with Plaintiff, her examinations of Plaintiff and her review of Plaintiff's medical file, Defendant Taherpour believes that it was medically acceptable and appropriate to discontinue Plaintiff's gabapentin and tramadol.  Taherpour Decl. ¶ 21.

## IV.     DISCUSSION

### A.     Deliberate Indifference

#### 1.     *Legal Standard*

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

#### 2.     *Analysis*

For purposes of this motion, Defendants concede that Plaintiff had a serious medical need.  They dispute, however, that their treatment was deliberately indifferent.

Plaintiff's claim against Defendants Wilson and Taherpour arises out of Plaintiff's disagreement with their course of treatment, specifically their decision to discontinue his

tramadol and gabapentin.  A mere difference of opinion between Plaintiff and Defendants regarding medical treatment does not give rise to a claim under section 1983.  Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88.

      The undisputed evidence shows that Plaintiff received regular treatment for his back pain beginning in 2007.  Prior to his arrival at PVSP, he was taking aspirin and ibuprofen for pain.  Shortly after Plaintiff was transferred to PVSP, Plaintiff underwent an x-ray that showed mild degenerative disc disease.  He was treated with numerous NSAIDs and eventually received gabapentin for possible neuropathy.  Although Plaintiff did not attend the nerve conduction study that had been ordered and scheduled, his gabapentin prescription continued until November 14, 2010.

      In August and October 2010, Plaintiff was evaluated by numerous nurses who noted no abnormalities and found that his subjective complaints were the only evidence of his back pain.

      On August 31, 2010, Plaintiff was evaluated by Defendant Wilson.  Again, no objective evidence for Plaintiff's back pain was found to support his claims of severe pain and neuropathy.  Plaintiff's examination was benign.  Nonetheless, to avoid discontinuation of medications that may be necessary, Defendant Wilson renewed his medications so that he could review Plaintiff's medical chart.

      On November 10, 2010, Plaintiff spoke with Defendant Taherpour about his pain.  She obtained a detailed medical history from Plaintiff, reviewed his file and examined him.  Defendant Taherpour found that his pain was consistent with musculoskeletal pain, not neuropathic pain. Gabapentin, which is used off-label to treat neuropathic pain, was not

medically indicated and Defendant Taherpour discontinued the medication by tapering Plaintiff off over a four-day period. She also advised Plaintiff that he had a questionable medical necessity for tramadol and that she thought NSAIDs would be better to treat his musculoskeletal pain. Rather than discontinuing the tramadol at that appointment, Defendant Taherpour prescribed ibuprofen for thirty days and scheduled a follow-up visit in thirty days.

Plaintiff was scheduled to see Defendant Green in follow-up on December 10, 2010. Plaintiff did not attend the appointment and his tramadol was discontinued that day. After December 10, 2010, Plaintiff was prescribed numerous NSAIDs for back pain.

In March 2011, the PMC reviewed Plaintiff's medical file and observed him during the meeting. Finding that Plaintiff showed no objective signs of difficulty moving, the PMC agreed that tramadol and gabapentin were not medically indicated for Plaintiff's level of pain. Rather, the PMC believed that NSAIDs were the appropriate medication and that Plaintiff could benefit from additional physical therapy.

Defendants have met their burden of setting forth evidence demonstrating that their course of treatment was medically acceptable under the circumstances, which shifts the burden to Plaintiff to submit admissible evidence showing that the course of treatment was medically unacceptable and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has not done so.

Plaintiff attempts to show that the course of treatment was not medically acceptable because Defendants discontinued effective medications in exchange for medications that caused Plaintiff pain in his stomach and liver area. Plaintiff also argues that Defendants knew that NSAIDs could (1) cause stomach bleeding because of his acid reflux disease; and (2) further damage his liver.

However, Plaintiff has not set forth sufficient evidence to create a dispute of fact. As a lay witness, Plaintiff is not qualified to render an opinion that Defendants improperly

discontinued his medications in favor of other medications, and that their decision to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Plaintiff's citation to medical texts discussing possible side effects is also insufficient.

Moreover, while Plaintiff may believe that he shouldn't take NSAIDs because they are causing stomach and/or liver issues, the medical evidence he submits shows that examining medical staff, including the PMC, were aware of Plaintiff's acid reflux and past history of Hepatitis C. Indeed, in November 2011, while he was taking the NSAID Indomethacin, Plaintiff was seen at the Hepatitis C clinic. He had no abdominal pain and did not want treatment. ECF No. 48 at 90.

In fact, there appears to be only one instance where Plaintiff complained of pain in his stomach and liver area. In an April 10, 2011, Health Care Services Request Form, Plaintiff states that ibuprofen was insufficient to treat his back pain and was causing pain in his stomach and liver area. Taherpour Decl. Ex. 15 (ECF No. 43-8 at 46). Plaintiff is not an expert and cannot make such a determination. In any event, when Defendant Taherpour examined Plaintiff on July 14, 2011, Plaintiff indicated that he had taken five ibuprofen that day. Defendant Taherpour advised Plaintiff that he had to take his medications as directed, and that taking *five pills at a time* could cause a stomach ulcer, kidney failure or even death. Defendant Taherpour discontinued Plaintiff's ibuprofen and placed him on Indocin. Taherpour Decl. Ex. 15 (ECF No. 43-8 at 52).

Although the parties appear to disagree as to whether Plaintiff's subjective complaints of pain were supported, this dispute does not create a triable issue of fact in the face of Defendant Taherpour's uncontroverted evidence that in her opinion, discontinuing gabapentin and tramadol in favor of NSAIDs was a medically appropriate course of treatment. Defendant Taherpour's description, made within the context of evaluating Plaintiff from a medical standpoint, is entitled

to deference in the absence of any evidence refuting it. Fed. R. Civ. P. 56(d)(4); Fed. R. Evid. 702.

Plaintiff's reliance on Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006) is misplaced. Plaintiff argues that pursuant to Jett, officials provide unconstitutional and inadequate medical care when they know that a particular course of treatment is ineffective, but do not alter it in an attempt to improve the treatment. In Jett, the plaintiff received *little, if any* treatment for at least two months following a thumb fracture. When he finally did receive medical care, the care was inadequate. Jett specifically explained why the facts differed from a case involving differing medical opinions. "In our view, this is not a case involving differing medical opinions regarding treatment methods . . . because Dr. Penner recognized, as did all other physicians who saw Mr. Jett, Mr. Jett needed to see an orthopedist, as evidenced by Dr. Penner's March 2002 request for an orthopedic consult for Mr. Jett." Jett, 439 F.3d 1091.

In contrast to the facts in Jett, Plaintiff received ongoing treatment for his back pain. Ultimately, after numerous examinations, the medical providers determined that the best course of treatment for Plaintiff's level of pain was treatment with NSAIDs, not Plaintiff's preferred medications. Plaintiff's disagreement with this treatment plan does not create an Eighth Amendment violation.

Next, Plaintiff suggests that Defendants discontinued his medication because of a policy, and that this decision, in light of his complaints of pain, shows that they acted with deliberate indifference. Plaintiff testimony about this policy is nothing more than his speculation, or the speculation of other inmates.

In sum, the record demonstrates that Plaintiff's complaints regarding his back pain were repeatedly and appropriately addressed by prison medical staff, including Defendants. Plaintiff's mere disagreement with the course of treatment chosen by Defendants does not support a claim

under the Eighth Amendment, and Defendants Taherpour and Wilson are entitled to summary judgment. Snow, 681 F.3d 987-88.

B. Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

As the Court has found that no constitutional violation has occurred, it need not further discuss the issue of qualified immunity.

## V. FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that the motion for summary judgment brought by Defendants Taherpour and Wilson be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections must be filed within fourteen (14) days from the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 8, 2014**

/s/ Dennis L. Beck
UNITED STATES MAGISTRATE JUDGE